Oliver H. Ross Piano Company v. Commissioner.
Oliver H. Ross Piano Co. v. Commissioner
Docket No. 9165.
United States Tax Court
1947 Tax Ct. Memo LEXIS 297; 6 T.C.M. (CCH) 157; T.C.M. (RIA) 47042; February 20, 1947
*297 Will A. Shaw, Esq., and W. M. Shaw, C.P.A., Dan Waggoner Bldg., Fort Worth, Tex., for the petitioner. J. Marvin Kelley, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: The Commissioner determined deficiencies as follows: For the calendar year 1942, $496.39 in income tax and $111.86 in declared value excess profits tax; and for the calendar year 1943, $22.01 in income tax and $13.36 in declared value excess profits tax. No error was assigned as to the year 1943. After abandonment of one issue at trial the only issue remaining is whether the Commissioner erred in denying a deduction of $2,307.91 because of a note in that amount which the petitioner alleges in the petition "was ascertained to be uncollectible during the calendar year 1942 and was charged against operations for such year." [The Facts] The facts involved are found to be as follows: The petitioner is a corporation organized and operating under the law of Texas. It makes its income tax returns on an accrual basis. Its returns for the period here involved were filed with the collector for the second district of Texas, at Dallas, Texas. In 1926 its capital stock was increased to *298 $100,000. Par value, and at that time actual value, was $100 a share. In that year one John W. Steele purchased 48 shares for $4,800, giving therefor his note for $4,800 secured by the shares. By March 26, 1928, he had paid the note down to $2,000, not including interest, and gave his renewal 6 per cent note for $2,307.91, including $307.91 interest. He never thereafter paid anything on either principal or interest on the note. He was an old friend of petitioner's president, and a jewelry salesman working on a commission basis. He has always continued that work. Nearly every time he came to Ft. Worth, the place of business of the petitioner, he would come and discuss with petitioner's president the matter of the note. This was two or three times a month. He always gave assurances that he would pay the note, but stated that he was not making enough money to pay on the note. No demand or request was ever made that he pay anything. The matter was merely discussed. The petitioner's business declined gradually after 1928, and got worse during the depression. The stock was not worth in 1942 what it had been in 1928. No interest was ever claimed by the petitioner on the note, except the $307.91 *299 embodied in it. No interest on the note was accrued on petitioner's records. Interest is usually computed by the petitioner at the end of the contract. About July 25, 1942, the petitioner received from John W. Steele a letter reading as follows: 775 Estes Ave., San Antonio, Tex. July 25th, 1942 Dear Mr. Ross - I am writing with reference to my note for stock, 2307.91 about which you wrote me recently, and I find that I shall be unable to pay this note, and as a matter of fact I do not feel that I should. But in any event the note is uncollectable [uncollected] for the reason that it is out of date, and as I am not able to pay it, I would be forced to let that be my defense in case you considered it necessary to take legal steps for collection. I therefore propose that you cancel the note and accept the return of 48 shares of stock, in full and complete settlement to all parties concerned. Yours very truly, [Sgd.] John W. Steele. He had never previously refused to pay the note. On petitioner's ledger sheet as to the note appears a notation, "chgd off J E 59 7-31-42. Worthless. Uncollectible." Petitioner's president considered Steele a man of honor and integrity, and *300 still has faith in him. The petitioner filed Federal income tax returns from 1929 through 1940, in each of which net losses were reported, and in none of which was the note deducted as a bad debt. For 1941 the petitioner reported a net income of $98.25. For 1942 its return reported net loss of $264.99, after deduction of $2,307.91 because of the Steele note, which is net income of $2,042.92 without such deduction. [Opinion] Though the petition alleges merely ascertainment of worthlessness and charge-off of the note in 1942, the question here is whether under section 23 (k) of the Internal Revenue Code, in effect in 1942, the Steele note "became worthless within the taxable year." On the facts above set forth the answer is clear: The petitioner has not shown that the note became worthless in 1942. It is apparent that proof was attempted under a former statute requiring only ascertainment of worthlessness and charge-off. There is no proof that prior to 1942 Steele was able to pay the note; rather the evidence is to the contrary, for Steele repeatedly stated that he was not able to pay. His financial position is otherwise not shown. When he became unable *301 to pay is purely conjectural. Nothing whatever indicates that the note actually became worthless in 1942. If anything (if we assume that the stock was then still collateral, though that is not shown), there appears at least some value in the note in 1942, to the extent of value of the pledged stock; for a $100,000 stock, the $2,042.92 net income of the corporation (before deduction of the Steele note) amounts to more than 2 per cent which, to say the least, tends to negative the idea of worthlessness of the stock, and therefore the debt. The corporation had income in 1943, as evidenced by the deficiency notice, not contested as to that year. The stock was, on the basis of earnings, worth less in prior years. We conclude and hold that the Commissioner is not shown to have erred in the determination of the deficiencies. Decision will be entered for the respondent.